## EVANS v. ADAMS.

The design of the statute, *Harr. Comp.* 248, requiring an affidavit in case of judgment confessed, was to interpose an additional guard against fraud by an appeal to the conscience of the plaintiff, as to the fairness of the transaction. It was not intended as a criterion by which the fraud or the *bona fides* of a judgment was to be tested; nor was it designed to introduce a new rule of law, admitting third persons to take advantage of errors, or irregularities in prior judgments. On the contrary, if the proceedings are regular, and the affidavit full and complete, yet if the judgment is fraudulent, it is void as against judgment creditors and purchasers; if *honest*, though *irregular*, it is binding against every body, but the defendant.

A judgment creditor has no right, simply because he is such, to inquire into the regularity of the judgment of another.

The Court of Common Pleas, on the application of judgment and execution creditors, set aside a judgment, because " upon inspecting the record, it appeared that the affidavit filed in the cause, was defective and illegal; and that the plaintiff or his attorney did not produce at the time of the confession of the judgment, an affidavit as required by law." *Held,* that a writ of error lies to the Court of Common Pleas to remove the proceedings into this court.

If the decision of a court, is an act of *grace* and *discretion*, which they might or might not have exercised, according to their sense of justice and equity, no writ of error lies—but if the court is bound to decide, and to do so, *ex merito justitiæ*, it is otherwise.

Error may be assigned on the out branches of the record, and when it is necessary, this court will award a writ of *certiorari*, auxiliary to the writ of error, to have such matters certified into this court.

The rule that error will only lie, upon proceedings which are according to the course of the common law, may be considered as abrogated in this State by the decisions made in the Court of Appeals.

On the 10th of February, and as of the term of February 1834, of the Common Pleas of Hunterdon county, judgment was signed before one of the Judges of that court, in favour of Samuel Evans, the plaintiff in error, against Adams, the defendant, for four hundred dollars of debt with costs, on a bond and warrant of attorney, given by him to the plaintiff. The papers were filed, and judgment was entered in the minutes of the court on the 13th February 1834, and execution was thereupon issued. In the term of August 1834, upon the suggestion of Philip J. Gray and Francis R. Morton, calling themselves judgment and execution creditors of Adams, that the judgment in favour of Evans, had been " irregularly and illegally entered,

the Court of Common Pleas, made a rule on Evans to show cause why his judgment and execution should not be set aside. In February term 1835, that rule, was made absolute ; and the judgment and execution were set aside, because, upon inspecting the record, it appeared that the affidavit filed in the cause was defective and illegal ; and that the plaintiff or his attorney did not produce at the time of the confession of the judgment an affidavit, as required by law." This proceeding of the Court of Common Pleas, is complained of by Evans as erroneous, and to have the same reversed, he has brought this writ of error.

*G. K. Drake,* for plaintiff in error.

*H. W. Green,* for defendant.

HORNBLOWER, C. J.   One judgment creditor, has no right, simply because he is such, to inquire into the *regularity* of another man's judgment.   He cannot, even upon the ground of fraud, impeach a prior judgment against his debtor, unless he can show a want of assets to satisfy his own.   Here was no allegation of fraud, nor any evidence that the plaintiff's execution stood in the way of Gray and Morton's.   The court below, simply upon the ground of *irregularity*, set aside a judgment at the instance of third persons, who for ought that appears, had no interest in the matter.   But granting that it stood in the way of their execution, they could not bring error upon that judgment.   So we decided in the case of *Black* v. *Kirgan*, at May term 1835, *ante* 45 ; and for the same reason they could not on motion, inquire into the regularity of the judgment.   The doctrine upon this subject, is fully and lucidly stated by Justice FORD, in *Scudder* v. *Coryell*, 5. *Halst.* 346.   The practice of permitting subsequent judgment creditors to come in upon motion and set aside judgments by confession, is based upon other principles : such applications are addressed to the equitable powers which courts exercise over such judgments, and are founded on facts disclosed to the court, showing that justice requires its interference.   But an irregularity in the entry of the first judgment, creates no equity in favour of the second. Justice does not require that it should be set aside on that ground, for, though irregular in form, it may be the most honest,

Evans *v.* Adams.

in fact. The farthest that this court has ever gone, (and I know of no instance in which any other court, has gone so far) was in the case of *Reed* v. *Bainbridge*, 1 *South. R.* 351: and admitting that decision to be law, which I very much doubt, it does not sustain the present case. The judgment, it is true, was set aside, by a majority of the court, on motion in behalf of a third person; but *he* was a purchaser, without *actual* notice, and in possession, of the lands affected by the judgment.

The late CHIEF JUSTICE of this court, in the case of *Latham* v. *Lawrence*, 6 *Halst. R.* 322, correctly stated the design of our statute which requires an affidavit. It was to prevent the signing of fraudulent judgments, by an appeal to the conscience of the plaintiff, as to the fairness of the transaction. It was only to interpose an additional guard against fraud, and was never intended as a criterion by which the *fraud*, or the *bona fides*, of a judgment, was to be tested. Nor was it designed to introduce a new rule of law, admitting third persons to take advantage of errors or irregularities in prior judgments. On the contrary, if the proceedings are regular, and the affidavit full and complete, yet, if the judgment is fraudulent, it is void as against purchasers and judgment creditors : on the other hand, if *honest*, though *irregular*, it is binding against every body, but the defendant. A different rule would introduce a flood of litigation, between struggling judgment creditors; the result of which would often be, that the honest creditor who had made some mistake in his proceedings, would be defeated; while the fraudulent and more practised one, with his regular judgment, studiously prepared for the occasion, would be preferred. Such was never the design of the statute, nor does the case of *Latham* v. *Lawrence*, establish any such doctrine. Neither do the cases of *Wood* v. *Hopkins*, *Penn. R.* 689, *and Milnor* v. *Milnor*, 4 *Halst. R.* 93, give any support to the position, that a third person may take advantage of an error, or irregularity in a prior judgment against his debtor. In both of those cases, the judgments had been signed *after* the death of the respective defendants, though as of terms antecedent to those events. In the former case, the judgment was set aside at the instance of the *administrator* of the defendant, expressly on the ground,

that by the statute for the distribution of the estates of persons dying insolvent, no judgment is entitled to a preference, except such as has been " *obtained and entered of record during the life of the defendant.*" In the latter case, (*Milnor* v. *Milnor,*) it is true, the judgment was set aside upon the application of *a creditor ;* but it was done precisely upon the same ground, and expressly upon the authority of *Wood* v. *Hopkins.* The late CHIEF JUSTICE, in *Milnor* v. *Milnor,* explicitly says, that neither in that case, nor in *Wood* v. *Hopkins,* was any irregularity complained of; and in the latter case, the court expressly admit upon the authorities there cited, that a judgment so entered is good *by relation,* and is only voidable as against creditors, by reason of our statute for the distribution of intestate's estates.

The decision of this court in the case already mentioned, of *Latham* v. *Lawrence,* 6 *Halst. R.* 322, settles nothing, except that the affidavit in that particular case, was insufficient. It no more sustains the right of a third person to impeach the regularity of a judgment, than it does the propriety of a writ of error in this case : and I admit it does neither. Those questions were expressly waived by agreement of the parties, and the sufficiency of the affidavit *alone,* discussed and submitted to the consideration of the court. I am therefore of opinion, that the Court of Common Pleas committed an error in entertaining a motion in behalf of third persons, to set aside the judgment for irregularity.

. But, 2dly, as to the affidavit itself, I am of opinion, it is sufficient. The plaintiff has made oath, that the true consideration of the bond, on which the judgment was entered, was two promissory notes made by the defendant, of which the copies annexed to the affidavit were true copies, and which notes had been duly assigned to him *for a valuable* consideration. The affidavit further states, to whom the notes had been given and by whom assigned to him, and the true considerations upon which they had been severally made, according to the plaintiff's belief; and that *the debt* is justly due and owing to him, &c. in the words of the act. The objection to this affidavit is, that the plaintiff has not sworn *positively* to the consideration of

the notes. But the case is very different from that of *Latham* v. *Lawrence*, 6 *Halst*. 322. There, the notes had been given to the plaintiff himself, and the consideration upon which they had been given, *was the true cause of the indebtedness*. Latham knew what that consideration was, if any existed, and he could not escape from disclosing the truth, by substituting a bond in the place of the notes, and then swearing that *they* were the true consideration of the bond. Not so in this case. The consideration upon which the notes had been given, was not the *true cause* of Adam's *indebtedness*, to the plaintiff, but the *valuable consideration* he had paid for the notes. No matter what they had been given for; whether for any consideration or not: if the plaintiff was the *bona fide* assignee for a valuable consideration he was entitled to recover the amount due upon them, nor was it necessary for him to state how much he gave for the notes ; if he bought them for less than their par value, it did not impair his title to the whole amount. *Scudder* v. *Coryell*, 5 *Halst. R.* 340. Besides, the plaintiff was an indorsee, and probably therefore, could not swear positively to the original consideration : and if such an affidavit is necessary in all cases, then neither executors, administrators, guardians, trustees nor assignees, can ever take a judgment by confession, unless they happen to have personal knowledge of the original transaction. But I apprehend the legislature did not intend to impose such a restriction upon the convenient and common law practice of entering up judgments on warrants of attorney.

3dly. That the Court of Common Pleas committed an error, there can be no doubt: but still the question recurs, can it be corrected in this court, upon a writ of error ?

It is conceded that error will not lie on a decision made in the exercise of a legal discretion : that is, in a matter properly addressing itself to the sound discretion, or the equitable powers of the court. This is a principle fully sustained by Chancellor KENT, in his very able argument delivered in the Court of Errors of the State of New York, in *Clason* v. *Shotwell*, 12 *Johns. R.* 31, and clearly established by various decisions. *Wright* v. *Hollingshead*, 1 *Peters' U. S. R.* 168; *McCourry* v. *Suydam*, 5 *Halst. R.* 248 ; *Shortz* v. *Quigly*, 1 *Binn. R.* 222.

But is this a case of that kind? In the language of the eminent jurist, whose name I have just mentioned, " every court of original and competent jurisdiction, must be clothed with summary and discretionary powers over a vast field of undefined matter, constantly arising, and necessarily incident to the due administration of justice." Applications, however, for the exercise of such powers, are *usually* supported by affidavits, and *always* founded upon some matter of fact subjected to the consideration of the court, as the ground upon which the exercise of its discretion is called for. In such cases the party making the application, cannot *demand* the summary interference of the court, as of *strict right,* (*ex rigora Juris,*) for it rests upon the truth and justice of his case, and is an appeal, not to the rules of law, but to the equitable power of the court. Let us apply these principles to the case before us. Was the decision of the court, setting aside this judgment, an act of " *grace and discretion,*" which they might or might not have exercised according to their sense of justice and equity? Or, were they bound to do so, *ex merito justiciæ ?* If the former, then I grant that no writ of error will lie; but, if the latter was the case, then clearly this decision does not fall within the rule which exempts discretionary orders and proceedings from the operation of a writ of error. But here was no application to the equity or discretion of the court, no motion founded upon an allegation of fraud or other new matter. It was an appeal to the *legal judgment* of the court, and if the party making that appeal, had a legal right to do so ; and if upon inspecting the record, there was error; then the court had no *discretion* to grant or refuse the motion, but were bound *ex debito Justiciæ,* to set aside the judgment.

If then the court below, entertained the motion of persons, not *rectus in curia,* or decided that the judgment was erroneous, when it was not so, (and I think they did both), they committed an *error in law;* and this court in the exercise of its supervisory jurisdiction, is bound, in some way to correct that error.

Again, this was not an *interlocutory,* but a *final* decision, terminating the suit, and denying the plaintiff's right of recovery in that action. The judgment was in effect reversed; not

Evans *v.* Adams.

opened, or set aside upon terms ; or for the purpose of letting in the defendant on the record, to a trial on the merits, but absolutely and unconditionally. The judgment, if irregular, was nevertheless binding on third persons, unless *fraudulent ;* and even if fraudulent, it was still binding on the defendant. The court therefore in either case, had no right to vacate and set it aside, and it will be a reproach to the administration of justice, if the proceeding cannot be corrected by some appellate jurisdiction. It is however, objected, that here is no *ideo consideratum est ;* and therefore error will not lie. But in *Yeates* v. *The People,* 6 *Johns. R.* 337, the Court of Errors of the State of New York, sustained a writ of error upon a decision of the Supreme Court of that State, on a writ of *habeas corpus,* refusing to discharge the prisoner out of the custody of the Sheriff. So too, in *Clason* v. *Shotwell,* 12 *Johns. R.* 31, a mere order of the Supreme Court, awarding a writ of re-restitution, made on *motion* only, and supported by affidavits, was reviewed and set aside on a writ of error. In the able arguments of counsel, and of members of the court, in those cases, authorities were cited, establishing beyond a doubt, that error will lie in England, where there is no *ideo consideratum est,* and even where no record, technically speaking, ever is, or can be made up. But we need not have recourse to the history of foreign jurisprudence, to find example and precedent in this matter. The Court of Appeals, of our own State, have in repeated instances, after solemn argument, sustained writs of error, upon proceedings had in this court, in cases, not according to the course of the common law, and where there was not, and from the nature of the proceedings could not be, *ideo consideratum est,* or *a record,* properly speaking. In the case of *Stansberry* v. *Squier,* 2 *South. R.* 861, a writ of error was sustained upon a judgment of amercement; a proceeding entirely statutory, and unknown to the common law, and upon which no common law record of judgment could be made up. Again, and more recently, in the Bridge Election case, reported under the name of *Taylor* v. *Griswold,* 2 *Green's R.* 223, a writ of error was sustained, upon a mere *decision* of this court, discharging a rule to show cause ; where no action was in

existence, and no *record* could be made. Other cases, it is believed, might be mentioned, but these are sufficient for my purpose. It is true, we cannot always ascertain with sufficient certainty to guide us, the points that have been ruled in our Court of Appeals; the arguments and decisions there made, not being reported for our information. But, that writs of error were sustained in that court, in the two cases just mentioned, is a fact against which we cannot shut our eyes; and their decisions, so far as we can ascertain them, demand our judicial deference and respect. Admitting, therefore that the Court of Appeals, have adopted, even to a very liberal extent, the legal maxim, " *Est boni judicis ampliare jurisdictionem,*" there is no reason why we should not follow in the path they have opened up for us, when that path if pursued, will inevitably, as in the present case, conduct us to a just result. Indeed, it seems to me, that the maxim just quoted is eminently applicable to this court, when we consider the existing structure and organization of the inferior tribunals, over which, it is the duty and province of this court, to extend a controlling and correcting jurisdiction. Unless therefore, the Court of Appeals, have a more extensive power of reviewing the proceedings of this court, upon writs of error, than we have, in reviewing the proceedings of Courts of Common Pleas, (which I presume will not be contended for,) we have high and direct authority for sustaining the writ of error in this case.

It is true, this court, in the case of *Kline* v. *Pemberton,* 2 *Halst.* 438, in the year 1803, dismissed a writ of error, brought on an order of the Court of Common Pleas, setting aside an amercement; but the reporter does not inform us, upon what ground, the amercement had been set aside. It was no doubt, at the instance of the defendant himself, and probably upon some matter, proper for the equitable consideration of the court. If however, the decision in that case, was made under the influence of the rule, that error will only lie upon proceedings that are according to the course of the common law, we are not now bound by it, since that rule may be fairly considered, as abrogated in this State, by the decisions I have referred to in our Court of Appeals. Another objection urged by the

counsel for Gray and Morton is, that the return to the writ of error, should have contained only the *record* from the book of judgments, and not the rules and proceedings of the court, from the book of minutes, as no error can be assigned on them. But error may be assigned, on the *out branches* of the record ; and when necessary, this court will award a writ of *certiorari,* auxiliary to the writ of error, to have such matters certified into this court. 1 *Archb. Pr.* 228, *tit.* ⸱*Writ of Error.* In *Stansbury* v. *Squier,* the same thing was done. The history of that case previous to its reaching the Court of Appeals, may be found in 2 *South.* R. 433. The Clerk of this court had made up a sort of record; but that record contained nothing upon which error could be assigned. The real question, was whether upon the facts in the case, (a statement of which had been agreed upon and filed in this court,) the Sheriff was liable to be amerced. A *certiorari* was sent to this court, requiring us to certify the state of the case, to the Court of Appeals, which was done ; and thereupon the judgment was reversed. So in the case of the Bridge Election ; there was no process, record or pleadings, upon which error could be assigned. The whole matter came before this court, on affidavits and exhibits ; and was reviewed in the Court of Appeals upon the same.

The cases of *Field* v. *Weatherwax,* 2 *Johns. cas.* 215, *and Horne* v. *Barney,* 19 *Johns. R.* 247, were cited to show, that error will not lie, on an arrest of judgment. If by this is meant, that error will not lie, on the opinion of the court, that judgment ought to be arrested, the position is conceded ; but if it is supposed, that the decision itself, cannot be reviewed, it is manifestly a mistake. True, until *final* judgment is rendered against the plaintiff, there is no judgment to be affirmed or reversed in error. But, as is expressly stated by the court, in the latter case, (*Horne* v. *Barney*), if the defendant neglects to pray for *final* judgment, and the court refuse to grant it, on the plaintiff's own motion, a *mandamus* will be awarded, to the end, that the plaintiff may have the benefit of a writ of error.

In *Lawrence* v. *Dickey,* 7 *Halst. R.* 368, this court held, that an order of the Court of Common Pleas, directing satisfaction to be entered of record, of a judgment in that court, was

reviewable here, upon a writ of *certiorari;* basing the decision upon the ground, that it was not an interlocutory, or discretionary, but a *final* order. This case I consider as a clear authority, that a *final* decision, "*not sounding in discretion,*" but "*of strict right,*" although, "*not technically a judgment,*" may be reviewed in this court. The case before us, is precisely of that character. *Lawrence* v. *Dickey,* was brought here by *certiorari,* and I think it was the appropriate writ. The decision of the Common Pleas, in that case, did not disturb the judgment; the entry of satisfaction was rather in affirmance of it: the judgment remained: but in this case, the judgment itself was reversed, and I think a writ of error is the proper remedy. Upon the whole I am of opinion, that the judgment order and proceeding of the court below, setting aside the judgment and execution in question, be reversed, and that the plaintiff be restored in all things, &c.

RYERSON, J. concurred.

FORD, J. A judgment was signed and recorded the 10th of February 1834, in Hunterdon Common Pleas, in favour of Samuel Evans against Elisha B. Adams, for four hundred and eighty-five dollars, eight cents of debt, and four dollars cost, on confession by warrant of attorney, accompanied by an affidavit. During the next ensuing term, other creditors of Adams obtained against him judgments and executions, and then obtained from the court a rule upon this plaintiff to show cause, why his judgment and execution should not be set aside, for alleged defects in his affidavit, and for its not being produced at the time judgment was confessed. Counsel were heard on the matter in February term 1835, when the rule was made absolute and entered in the minutes of the court, that the plaintiff's judgment and execution *be set aside, made void, and for nothing holden.* Thereupon the plaintiff brings a writ of error, to which the judges make a return of what had been a judgment and execution in their court, but was no longer so, together with copies of their rules, taken from the minutes of the court. Though the plaintiff had alleged that there were errors in the judgment and process, and that allegation was recited in the body of the writ, as the only ground upon which

Evans *v.* Adams.

it issued, yet in his assignment of errors, he departs entirely from the allegation in the writ, and assigns errors only in the rule of court, which is no part of the record, but altogether *dehors* and collateral to it. The true question is, whether a writ of error to reverse a rule of court, was ever known to lie at the common law ; and I am constrained to say, that I do not know a principle of law, nor any precedent in the books, for such a proceeding ; and as an inevitable consequence, it must draw within the decision of this court, all proceedings collateral to the record, heard in the courts below, upon rules to show cause.

1. A writ of error does not lie to reverse a rule of court, on any known principle of the common law. *Co. Litt.* 288, *b*, is very express, " That without a judgment, or an award in nature of a judgment, no writ of error lieth." Now what is a judgment? By the common law, it is a final decision, entered of record, on a parchment roll, called the judgment roll, under the signature of a Judge of the court. Our legislature have wisely abolished the parchment roll, by substituting in its place a book ; so that under our statute, a judgment is a final decision, entered of record, in the book of judgments, under the signature of a Judge ; and an award cannot be in the nature of a judgment, unless it be a part of the record in the book of judgments, under like signature ; such as the award of oyer, a venire, writ of inquiry, execution, &c. which are all of record. Now, is a rule of court a judgment? No book, no principle of law, no established precedent, ever so considered it ; for a rule is no record, it is never entered in the book of judgments, nor under the signature of a Judge ; and there can be no judgment without a record. The venerable sages, from LORD COKE down to BLACKSTONE, when treating of records, speak of an imparlance roll, a plea roll, an issue roll and a judgment roll ; but who ever heard of a rule-roll? The place for a rule, and it is the only place, is in the minutes of the court ; but the minutes are no record, nor are they ever signed by a Judge ; they are *side memorandums*, entirely extraneous to the record. If we allow a writ of error for reversing the *minutes* of a court, a new writ should be devised applicable to the innovation. The

recital in the only writ known in law, that there are errors alleged in the judgment and process, when none are alleged, is libellous; for the only complaint made, is against a collateral rule, entered long after judgment, in the minutes of the court. Such a proceeding was never known in law, as an assignment, of *errors,* accompanied with a prayer, that for the errors assigned the judgment may be *affirmed.* The absurdity is the direct result of an attempt to reverse a rule of court, on a common writ of error.

2d. There is no judgment now in being, which this court can judicially reverse, or affirm. We are officially informed by the court below, in their return to the writ of error, that they have set their judgment *aside;* that it is vacated, and disclaimed as a judgment of theirs. Now every court of common law jurisdiction is invested with a *discretion* to set aside its own judgment, when it considers it to be erroneous; and it not only is essential to the administration of justice, that they should possess such a discretion; but the exercise of it, is as ancient as Edward I. His tyranny, at one time, gave a timidity to the courts; but it was temporary and could not last; for as BLACKSTONE truly observes, it produced a narrowness of thinking that obstructed public justice, and became ruinous to suitors. This court almost daily, exercises this very discretion, of setting aside its own judgment, whenever it deems one to be improperly rendered, and it immediately ceases to be a judgment. If we strip the Common Pleas of this discretion, we must strip this court of it also; for they stand on one principle. If this be so, then there is no judgment now in being, and if we make one, it will be an *original* judgment of this court; and in our execution we cannot recite it, with truth, to be a judgment of the Common Pleas, affirmed here, for we have the highest judicial evidence, that there is no such judgment below.

3. An error in matter of *discretion,* is not examinable in this court, either by *certiorari,* or on writ of error. This was so settled, in *Wright* v. *Green,* 6 *Halst.* 334, by all the Justices of this court, in the time of EWING, C. J. who adopted the words of YATES, J. that " error will not lie, on every opinion, delivered by the court. The law, confides many matters to

*their discretion*, and courts of error will not deem themselves *at liberty* to review the same." He adopts also, in his opinion, the appropriate words of Chief Justice KENT, "that there seems to be no position more uniformly admitted, than that error will *not* lie in a matter *resting on discretion*." And Chief Justice EWING instanced this very case, *of setting aside a judgment*, as one on which the law has wisely resolved, that error will not lie; because the circumstances that govern the court are scarcely susceptible of being intelligibly exhibited on paper to the court above. There always were, and forever will be, in litigated causes, some matters resting *in discretion*, *dehors* the record; perhaps more than half of the litigated business every term in our own court, is of this kind; discharging from arrest, ordering common bail, amending process and pleadings, striking out pleas and notices, setting aside, or opening judgments, setting aside reports, refusing or granting new trials, settling priorities on conflicting executions, determining on the legality of depositions taken *de bene esse*, and other instances innumerable. They are heard in a collateral way, upon affidavits and counter affidavits, letters, documents, exhibits; and in the Common pleas, and sometimes here, on parol evidence, which, if the law permitted to be entered on the record, would be ruinously expensive to suitors; and as there is no process known in law, for bringing up any of the circumstances which guided the court in these collateral matters, and the record does not show them, they are inaccessable. We may order the court below to send up its record, by writ; but there is no writ to order them to send up their affidavits, private vouchers, the substance of parol evidence, or their minutes, to enable us to look out of the record. Hence arose the declaration of Chief Justice KENT, that there seems to be *no proposition* more *universally admitted*, than that error will *not* lie, in a matter resting *on discretion*. If we sanction an inquisition into the minutes, the files and the affidavits of the court below, to see what governed their discretion, in opening judgments, setting judgments aside, or doing other matter, within their discretion, as a court of common law, and thus travel out of their record, the business of their courts in every conceivable case

may pour into this.   If we review a matter of mere discretion, wholly aside from their record, in this case, I see no consistent ground for refusing to do so, in all cases.   To this result it inevitably tends.   There is not a motion for a new trial, discharge of a report of referees, striking out a plea or a notice, or amendment of a writ or return, or a pleading, but may be brought here, upon a writ of error, if we allow ourselves to look out of the record into their minutes in search of the reasons upon which they acted.   With these views, I feel constrained to say, that this writ of error will not lie to reverse a rule in the minutes of the court below, and until it is reversed there is no judgment there, and consequently none here, upon which we can act, either for reversal or affirmance.   In my opinion, the writ of error ought to be quashed.

> *Judgment reversed, and plaintiff to be restored in all things, &c.*

CITED in *Norcross* v. *Boulton,* 1 *Harr.* 313 ; *Brewer* v. *Ware,* 3 *Harr.* 372 ; *Den, Rutherford* v. *Fen,* 1 *Zab.* 703 ; *Reading* v. *Reading,* 4 *Zab.* 362–365 ; *Ely* v. *Parkhurst,* 1 *Dutch.* 194 ; *Clapp* v. *Ely,* 3 *Dutch.* 569–587–590–598.